# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JAY V. OSBORN,

    *Plaintiff,*

vs.

AMERICAN FAMILY MUTUAL INS. CO.,

    *Defendant.*

Case No. 16-CV-1332-EFM-GLR

## MEMORANDUM AND ORDER

Plaintiff Jay V. Osborn brings suit against Defendant American Family Mutual Insurance Company ("American Family") for injuries arising from a gunshot wound that he sustained while he was driving his vehicle. Defendant asserts that it is entitled to judgment on the pleadings because the incident at issue is not covered under the insurance policy. Because the Court finds that the factual allegations in this case do not fall under the Uninsured Motorist provision, the Court grants Defendant's Motion for Judgment on the Pleadings (Doc. 11).

### I.     Factual and Procedural Background[1]

On February 25, 2016, Plaintiff was driving his vehicle in Newton, Kansas. Cedric Ford, an uninsured motorist, was driving an uninsured vehicle on the shoulder of the road toward Plaintiff's vehicle. Ford had ingested both methamphetamine and alcohol and was in an

---

[1] The facts are taken from the pleadings and the insurance policy attached to the Complaint.

impaired state. As the two vehicles approached each other, Ford began firing a gun randomly from his vehicle. Plaintiff was hit by bullets from Ford's gun. Plaintiff suffered injuries to his left shoulder, chest, and back and was severely and permanently injured.

Plaintiff has an insurance policy through Defendant American Family. Plaintiff's insurance policy provides for both Personal Injury Protection ("PIP") and Uninsured Motorist coverage. Defendant paid benefits to Plaintiff pursuant to the PIP portion of the policy. Defendant, however, denied Plaintiff's claim for coverage under the Uninsured Motorist portion. The language in the policy relating to Uninsured Motorists Coverage states in part:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle. The bodily injury must be sustained by an Insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle or the underinsured motor vehicle.

Plaintiff now brings suit against Defendant for benefits under the Uninsured Motorist provision. Defendant moves for judgment on the pleadings arguing that Plaintiff's claim must fail as a matter of law because the incident does not fall under the insurance policy.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.[2] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[3] To survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must

---

[2] Fed. R. Civ. P. 12(c).

[3] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

contain "enough facts to state a claim to relief that is plausible on its face."[4] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[5] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[6] Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[7]

### III. Analysis

Defendant makes two arguments that coverage does not apply. First, Defendant asserts that the injury does not arise out of the use of the uninsured motorist's vehicle. Second, Defendant asserts that the fact that it provided PIP coverage to Plaintiff does not estop it from denying Uninsured Motorist coverage. The Court will address each argument in turn.

#### A. Arising Out of the Use of the Uninsured Motor Vehicle

Defendant contends that Plaintiff's gunshot wound did not arise out of the use of an uninsured vehicle. Plaintiff disagrees and argues that his injury was accidental and arose from an uninsured motorist's use of a motor vehicle when that motorist drove toward Plaintiff's vehicle randomly firing a gun. As noted above, the Uninsured Motorist provision states:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle or the underinsured motor vehicle.

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[5] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).

[6] *Id.* (quotations marks and citation omitted).

[7] *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). Plaintiff attached the insurance policy to his Complaint.

The parties focus on what it means for the bodily injury to "arise out of the use" of the uninsured motor vehicle.[8] Although there are no Kansas cases with analogous facts, several Kansas cases have considered whether an injury has arisen out of the use of a motor vehicle.[9] The Court will provide a brief overview.

In *Farm Bureau Mutual Insurance Co. v. Evans*,[10] an individual threw a lighted firework from the rear of a parked car which landed and exploded in a glass of beer, injuring the person holding the glass.[11] When considering whether the injury arose out of the use of the automobile, the Kansas Court of Appeals stated that there must be "some causal connection or relation between the use of the vehicle and the injury."[12] It also explained this concept in another way by stating that "an injury does not arise out of the 'use' of a vehicle within the meaning of the coverage clause of an automobile liability policy if it is caused by some intervening cause not identifiable with normal ownership, maintenance and use of the [un]insured vehicle and the injury complained of."[13] "The provision, however, imparts a more liberal concept of a causation than 'proximate cause' in its traditional, legal sense."[14] The court concluded that the use of the

---

[8] The full sentence states: "The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle or the underinsured motor vehicle." "Accident" appears to be a key term in determining the applicability of this provision. However, it does not appear that accident is defined in the policy. In addition, the parties do not discuss the meaning of or the relevancy of the term "accident." Because of the lack of discussion, the Court will not consider the impact of the requirement that the bodily injury "must be caused by accident."

[9] The jurisdictional basis for this case is diversity. Thus, Kansas substantive law is applicable.

[10] 7 Kan. App. 2d 60, 637 P.2d 491 (1981).

[11] *Id*. at 493.

[12] *Id*. at 494.

[13] *Id.* (citations omitted).

[14] *Id.* (citations omitted).

vehicle did not causally contribute to the individual's injuries as the firework was simply lit inside the vehicle.[15]

In *Hamidian v. State Farm Fire & Casualty Co.*,[16] the Kansas Supreme Court considered whether injuries and a death arose from the use of an uninsured motor vehicle. In that case, a male was driving his insured vehicle when an uninsured vehicle lightly bumped the back of his vehicle.[17] The driver of the insured vehicle pulled over and walked to the back of his car.[18] The uninsured motorist exited his car and shot the driver, killing him, and then stole his wallet.[19] The insured driver's mother exited the vehicle and came to the back of the car and was also shot in both arms.[20] The uninsured motorist then returned to his car and sped away.[21]

After reviewing several Kansas cases, and the law set forth in *Evans*, the Kansas Supreme Court found that the death and injuries did not arise from the use of a motor vehicle.[22] Instead, the court stated "[t]he shootings were intentional acts unrelated to the operation of a motor vehicle. If the incident herein was a bump-and-run robbery, the vehicle was used only to get the

---

[15] *Id.*

[16] 251 Kan. 254, 833 P.2d 1007 (1992).

[17] *Id.* at 1008.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 1013.

driver to stop."[23] Thus, the court concluded that the uninsured motorist provision was inapplicable to the facts of the case.[24]

In *Garrison v. State Farm Mutual Automobile Insurance Co.*,[25] a passenger in a vehicle accidentally discharged his shotgun while exiting the car during a hunting trip and shot the driver.[26] The driver sought coverage under his insurance policy for PIP benefits.[27] Although the plaintiff was seeking benefits under the PIP provision rather than the uninsured motorist provision, the Kansas Supreme Court considered whether the accident arose out of the use of a motor vehicle.[28] It set forth the causation test for the terms "arising out of" and "use" of a vehicle as "the use of the vehicle need not be the proximate cause of the injury, but rather it is sufficient if the use of the vehicle is a cause in a more liberal sense."[29] The court also stated that "[c]overage exists where the minimal causal connection between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle for hunting."[30] The court did point out that the "use" of the car did not necessarily mean that it had to be a normal or

---

[23] *Id.*

[24] *Id.*

[25] 258 Kan. 547, 907 P.2d 891 (1995).

[26] *Id.* at 893.

[27] *Id.*

[28] *Id.* at 894. The distinction between a PIP and Uninsured Motorist provision will be discussed in further detail below.

[29] *Id.*

[30] *Id.* at 895.

lawful use.[31] Ultimately, the Kansas Supreme Court concluded that the injury arose from the use of the vehicle because the vehicle was being used for hunting.[32]

In this case, Plaintiff contends that his injuries arose from the uninsured motorist's use of the vehicle because the vehicle provided the uninsured motorist with the means to approach Plaintiff in close proximity. Thus, Plaintiff contends that the uninsured motorist's use of the uninsured vehicle was the actual means that enabled the motorist to injure him and the vehicle was a mechanical accomplice or active accessory. Plaintiff directs the Court to *State Farm Mutual Automobile Insurance Co. v. Blystra*,[33] a Tenth Circuit case. In that case, a boy was walking down the street and hit by a bullet shot from either the passenger or the driver in a truck that drove by.[34] In determining whether uninsured motorist coverage was applicable to the boy's injuries, the Tenth Circuit considered whether the injuries arose out of the use of the uninsured vehicle.[35] To make this determination, the court applied New Mexico law which employs a three-part test.[36] The first element requires a sufficient causal nexus between the use of the car and the injury and requires considering whether the vehicle was an "active accessory" in the injury.[37] The Tenth Circuit stated that "[w]hen an automobile is used by an assailant to undertake a drive-by shooting, the automobile is almost by definition an 'active accessory' to the

---

[31] *Id*. at 896.

[32] *Id.*

[33] 86 F.3d 1007 (10th Cir. 1996).

[34] *Id.* at 1009.

[35] *Id*. at 1011-14. The Tenth Circuit first considered whether the injuries were caused by an "accident" and determined that they were. As noted above, the parties in this case have not discussed what the term "accident" means.

[36] *Id*. at 1012.

[37] *Id.* (citations omitted).

assault."[38] Concluding that the uninsured vehicle was an "active accessory," the Tenth Circuit found that there was a sufficient causal connection between its use and the victim's injuries.[39] The Tenth Circuit went on to find that the two other elements were met and thus the drive-by shooting was compensable under an uninsured motorist policy.[40]

This case, however, is not persuasive. As noted above, the Tenth Circuit applied New Mexico law as the incident occurred in that jurisdiction. Here, Kansas law is applicable. The difference between the law in these two jurisdictions appears to differ significantly. Kansas does not employ New Mexico's three-part test. And more specifically, Kansas does not consider whether the car was used as an "active accessory" when looking at whether a victim's injuries arose from the use of the vehicle. In *Garrison*, the Kansas Supreme Court noted that Minnesota employs the "active accessory" test and stated that Kansas does not impose such a requirement.[41] Thus, whether the vehicle is an "active accessory" is not a consideration and the Tenth Circuit's *Blystra* opinion is unpersuasive.

Furthermore, although all of the cases in Kansas involve different facts, on more than one occasion, the Kansas courts have expressed doubt that an intentional shooting from a vehicle would be covered by the provision "arising out of the use" of the vehicle. In the first case involving a lighted firework thrown from a parked car, the Kansas Court of Appeals stated that the use of the car did not causally contribute to the individual's injuries "anymore than it would

---

[38] *Id.* at 1012.

[39] *Id.*

[40] *Id.* at 1012-13.

[41] *Garrison*, 907 P.2d at 895 ("The [Kansas] Court of Appeals noted that under Minnesota law, the vehicle must be an 'active accessory' to the accident, but found no precedent to suggest that we would impose such a requirement. We agree. The Minnesota cases are factually distinguishable.").

-8-

have if one of the occupants under the facts present in this case had shot her with a firearm."[42] In *Garrison*, a case involving a moving vehicle in which the Kansas Supreme Court found that the driver's injuries from a gunshot wound were covered, the court stated that the holding would not likely be expanded to cover drive-by shootings because "[t]he difference between a hunting trip and a drive-by shooting seems obvious."[43]

Here, Plaintiff's injuries did not arise from the uninsured motorist's use of the vehicle but rather from the gunshot wounds that he received. Although the vehicle was moving, the vehicle's involvement was incidental to the injuries that Plaintiff received. Thus, under Kansas law and the facts alleged in this case, the Uninsured Motorist provision does not provide coverage for Plaintiff's injuries.

**B. Estoppel**

Plaintiff also alleges in his Complaint that Defendant's payment of PIP benefits estops Defendant from denying that this incident arises out of the use of the vehicle. Defendant asserts that its payment of PIP benefits does not constitute acceptance of coverage for Uninsured Motorist benefits. The PIP provision in Plaintiff's policy states: "We will pay, in accordance with the Kansas Automobile Injury Reparations Act, personal injury protection benefits for 1. medical expenses, 2. rehabilitation expenses, … incurred for bodily injury to an eligible injured person caused by an accident due to maintenance or use of a motor vehicle."

The Uninsured Motorist and PIP provisions have similar language. The language, however, is not identical and importantly, these provisions are in separate parts of the policy. With regard to the PIP provision, it covers bodily injury "caused by … maintenance or use of a

---

[42] *Evans*, 637 P.2d at 494.

[43] *Garrison*, 907 P.2d at 896.

motor vehicle." As to the Uninsured Motorist provision, it states that "[t]he bodily injury must … arise out of the use of the *uninsured* motor vehicle or the *underinsured* motor vehicle." The distinction between the two is clear. The Uninsured Motorist provision relates to the use of the uninsured motor vehicle while the PIP provision relates to the insured's vehicle.

Plaintiff appears to disagree that the PIP coverage is limited solely to the insured's car. However, if the PIP provision covered uninsured vehicles, the PIP and Uninsured Motorist provisions would be duplicative. There is a distinction in the language, and the PIP coverage is a separate endorsement to the insurance policy. Coverage under one part does not necessarily imply coverage under another part. Rather, the facts of the case must be applied to each separate provision.

Several cases support this point. In *Hamidian*, a case discussed above, the Kansas Court of Appeals denied coverage under the uninsured motorist provision because it found that the uninsured motorist's vehicle was not in use at the time of the injury.[44] The court also denied coverage under the PIP provision because it found that the insured's injuries did not result from the use of his own vehicle as he was not operating it at the time of the shooting.[45]

In *Carrasco v. Allstate Insurance Co.*,[46] an unpublished opinion by the Kansas Court of Appeals, the court noted the difference between PIP benefits and uninsured motorist benefits. The plaintiff argued that the defendant's payment of PIP benefits supported payment of uninsured motorist benefits because the PIP language was identical to the uninsured motorist

---

[44] *Hamidian*, 833 P.2d at 1013.

[45] *Id.* That fact contrasts with the fact in this case as Plaintiff was operating his vehicle when he was shot, but Defendant provided Plaintiff with PIP benefits.

[46] 2011 WL 6413626 (Kan. Ct. App. 2011).

language and should be interpreted in the same manner.⁴⁷ The court first disagreed that the language was identical, but it also stated that "more importantly the PIP benefits turned on whether [the plaintiff], not the assailant, made use of the [vehicle]. The questions are distinct."⁴⁸

Here, the PIP and Uninsured Motorist provisions are different and arise from different policy language. One requires the consideration of the insured's vehicle use and one requires the consideration of the uninsured's vehicle use. Accordingly, the Court finds that Defendant is not estopped from denying coverage under the Uninsured Motorist provision.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 24ᵗʰ day of April, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

⁴⁷ *Id*. at *6.

⁴⁸ *Id.*